Booth v. Kiefer.

ALFRED W. BOOTH et al.

60   57
68L 184

v.

ELIZABETH KIEFER.

[Submitted July 22d, 1900.  Decided August 8th, 1900.
Filed February 11th, 1901.]

*Gen. Stat. p. 2073 § 38* provides that whenever any contractor shall, upon demand, refuse to pay any materialman the money due him, it shall be the duty of such materialman to give notice to the owner of the building of the amount due him, and that the owner shall thereupon be authorized to detain the amount due out of the amount owing to the contractor. *Gen. Stat. p. 2074 § 41* provides that if the owner of a building shall, in advance of the terms of a building contract, pay any money on the contract, and the amount still due to the contractor, after such payment, shall be insufficient to satisfy the notices served in conformity with section 38, such owner shall be liable as if no such payment had been made.—*Held*, that where a dispute arose between the owner of a building and one who had contracted to make repairs, and there was a submission to arbitration of matters in difference between them, concerning the materials used, &c., the liability of the owner to make the last payment did not mature until the award of arbitration was made, and claims of materialmen, of which notice was given to the owner of the building pending the arbitration proceedings had preference over a prior draft drawn by the contractor on the owner in favor of the plaintiff, whose claim against the contractor had no connection with the building.

On bill, answer and proofs.

*Mr. James Benny,* for the complainants.

*Mr. Elmer W. Demarest,* for the defendant.

PITNEY, V. C.

The bill is filed by Booth & Brothers against Mrs. Kiefer to compel payment of an unaccepted draft or order dated September 15th, 1899, drawn by one Buettner on Mrs. Kiefer, in favor of complainants, for the sum of $600, with directions to deduct the same from payment due Buettner·on his contract with Mrs.

Kiefer for building a house located on East Thirtieth street, in the city of Bayonne.

The bill alleges that Buettner had built a house for Mrs. Kiefer, under contract, for the sum of $1,500, payable in three payments, the first of $450, the second of $450, and the third of $600; and it alleges, in substance, that the work was completed and that the third payment was due from Mrs. Kiefer to Buettner. It reaches this conclusion by setting out a submission to arbitration, and an award made by the arbitrators, which, as alleged, showed a balance of over $400 due from Mrs. Kiefer to Buettner. The submission to arbitration is dated November 7th, 1899, and the award is dated November 27th, 1899.

The defendant sets up in her answer that Buettner never fulfilled his contract, and never became entitled to his last payment; that he refused to finish the job, and the parties not being able to agree entered into the submission to arbitration, which reads in this wise:

"Witnesseth, that the said parties hereby do agree to submit all matters in difference between them concerning the kind and quality of materials used, the kind of workmanship, and the works omitted, if any, and all extra work and materials, and all deviations from the plans and specifications, as agreed," &c.

It further sets up that pending the arbitration the Consumers Coal and Ice Company, which had furnished materials to Buettner for the erection of the building to the extent of $359.70, served a notice upon defendant, under the third section of the statute, and claimed the amount so due them out of whatever should be found due from her to Buettner, and submits herself to the jurisdiction of the court.

To the extent, of course, that Mrs. Kiefer is liable, under the statute, to the Consumers Coal and Ice Company, she is entitled to protection as against the order of Buettner in favor of the complainants.

There is no serious dispute about the principal facts of the case.

It is admitted that the complainants' order is not based on any materials furnished to defendant's building, and, if it were, it

would not be of any advantage to them under the decision of the court of errors and appeals in *Bayonne Building Association* v. *Williams,* as reported in *14 Dick. Ch. Rep. 617.* And it is further admitted that the stop notice of the Consumers Coal and Ice Company was based on an indebtedness due from Buettner to it for materials which were used on Mrs. Kiefer's house, for the amount stated in the notice, for which a demand had been made, and which Buettner had refused to pay.

The question, then, between the parties is simply which has precedence on the funds in the hands of Mrs. Kiefer—the complainants or the Consumers Coal and Ice Company, which latter are not parties to the suit, but which conducted the defence for Mrs. Kiefer.

It will be observed that the submission to arbitration did not provide that the arbitrators should find whether any money was due from Mrs. Kiefer to Mr. Buettner, but simply

"to submit the matters in difference between them concerning the kind and quality of materials used, the kind of workmanship, and the works omitted, if any, and all extra work and materials and all deviations from the plans and specifications."

The arbitrators found as follows:

"*First.* We do award that said W. John Buettner deduct from the contract price named in the contract, the sum of fifty dollars as previously agreed upon between said Buettner and said Elizabeth Kiefer for the omission of the two attic rooms.

"*Second.* We do award that the said W. John Buettner deduct from said contract price the sum of sixty dollars for defective workmanship on the roof of said building, and the further sum of twelve dollars for defective workmanship and inferior material in the piers under the front of said building; and the further sum of five dollars for defective workmanship in the plumbing work of said building.

"*Third.* We do award that the said W. John Buettner is not entitled to any compensation for works claimed by him to be extra work on said building.

"*Fourth.* We do award that the said W. John Buettner shall deduct from the contract price the sum of thirty-seven and 50-100 dollars as one-half of the expense of these proceedings, and that the said Elizabeth Kiefer shall then immediately pay to said arbitrators the whole of said expenses."

Booth *v.* Kiefer.

It was further proven that the work done under the contract was simply the putting an additional story on a one-story-and-a-half house in the actual occupation of Mrs. Kiefer. She did not move out of the house, but continued to live in it while the work was being done.

The original price, according to the plans and specifications, was $1,450, but before the contract was signed it was agreed orally between the parties that for an additional sum of $50 Buettner should make and finish off two rooms in the attic, and the sum of $1,500 was inserted in the contract, but the additional work in the attic was not inserted in the specifications. This work in the attic he never did, except in part.

Besides that default, the roof was so entirely defective that the amount of $60 was fixed in the award as the amount which it would cost to put a new roof on.

Then the piers under the piazza were, by the specifications, to be twelve-inch-square brick piers, and they were, in fact, only eight inches square.

Buettner contended that he did all the work in the attic which he agreed to do; that he did not agree to do the mason work, and that he did set the partitions ready for the masons. But he did not hang the doors, and his story that he was not to do the mason work is simply absurd, since, by the written contract, he was to do all the work—mason and carpenter work, plumbing and tinning. So that it is proven as a fact in this cause that he never finished the building, and never became in law entitled to sue for and recover the last payment.

This is substantially admitted by the complainants. But they contend that the submission to arbitration was in effect an acceptance of the job by the defendant, and that on signing it a sum of money became due from her to Buettner, the amount to be determined by the award of the arbitrators.

I am unable to adopt this view. No money was due from Mrs. Kiefer to Buettner until the award of the arbitrators was made; and it may be an open question whether even after that an action at law could be maintained. He had never fulfilled his contract; and *non constat* that the arbitrators would ever make an award; the submission might be revoked, or the arbi-

trators might die, or fail to agree; and I am of the opinion that the actual making of the award was an absolute prerequisite to any cause of action by Buettner against Mrs. Kiefer. The stop notice of the Consumers Coal and Ice Company was served on Mrs. Kiefer before the award was made. That being so, I am unable to see how the complainants can have preference over the Consumers Coal and Ice Company.

The fifth section of the Mechanics' Lien law, as amended March 14th, 1895 (*Gen. Stat. p. 2073*), provides that if the owner of a building *shall in advance of the terms of such contract,* pay any money or other valuable thing on such contract, and the amount still due to the contractor, after such payment has been made, shall be insufficient to satisfy the notices served in conformity with the provisions of the third section of the original act, such owner shall be liable in the same manner as if no such payment had been made.

In construing that act the court of errors and appeals, in *Slingerland* v. *Binns, 11 Dick. Ch. Rep. 413* (at *p. 415*), said: "It directs that the owner shall not in any way discharge his liability to pay under the contract, *until,* according to the terms of the contract, *the time to do so has arrived,* in order that *until that time* such liability may be preserved for the benefit of workmen and materialmen who serve the statutory notice. This enactment affords a reasonably clear indication of a legislative purpose to give to persons entitled to serve the statutory notice an inchoate lien upon the liability of the owner under the contract, *until that liability matures,* according to the terms of the contract, such lien to become perfect on service of the notice before the liability matures, but to expire on such maturity if no notice has been given."

This view was reiterated by the court of errors and appeals in *Bayonne Building Association* v. *Williams, 14 Dick. Ch. Rep. 617.*

In my judgment, the payment to Buettner never matured and became due until after the arbitrators had made their award.

My conclusion, therefore, is that the claim of the Consumers Coal and Ice Company must be first satisfied before the complainants are entitled to any payment on their order; and as the

complainants have claimed priority over the coal and ice company and been defeated, the defendant's costs must also be paid. The result will be, I suppose, that the complainants will get nothing.